**Charles Anthony WILLIAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–92–053–CR.**

Court of Appeals of Texas,
Texarkana.

March 3, 1993.

Fred L. Tinsley, Dallas, for appellant.

Lisa Fox, Asst. Dist. Atty., Dallas, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Charles Williams appeals his conviction of aggravated sexual assault. We find the evidence factually and legally sufficient to support the conviction, and affirm.

■ In Williams' one point of error, he claims that the evidence is insufficient to show his guilt of the offense beyond a reasonable doubt. We consider that Williams has challenged the evidence as being both legally and factually insufficient to support his conviction. In determining whether evidence is legally sufficient to support a judgment, we view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App. 1991). Our exclusive fact jurisdiction under the constitution both permits and requires us to review the factual sufficiency when sufficiency of the evidence is challenged on appeal. *See Stone v. State,* 823 S.W.2d 375 (Tex.App.–Austin 1992, pet. ref'd, untimely filed). In determining whether the evidence is factually sufficient, we must decide, after considering all the relevant evidence, whether the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *See Meraz v. State,* 785 S.W.2d 146, 155 (Tex.Crim.App.1990). In our review of the evidence, however, we are mindful that a jury is the exclusive judge of the credibility of the witnesses and may reject any or all of any witness' testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981). We now turn to the facts presented at trial.

About 4:30 a.m., June 27, 1988, the victim heard a noise outside her Dallas County apartment. She saw that the front door to her apartment was partly opened, yet chained, and saw someone outside the door. She screamed. Her attackers kicked in the door and grabbed her from behind before dragging her to the bedroom. An individual put his hand over her mouth and threatened to kill her if she did not stop screaming. She was thrown down on the bed, and her face was covered with a comforter and a towel. When she struggled, one of the assailants hit her on the head. She was blindfolded, and her hands were tied with a telephone cord before she was sexually assaulted by two assailants. Before leaving, they also tied her feet with a telephone cord and placed her in a closet.

■ When she was able to untie herself, she called the police and was given a medical examination at Parkland Hospital. During the examination, the doctor observed swelling around her ankles and wrists and collected samples of seminal fluid removed from the victim's vaginal area. Blood and saliva samples were taken from Williams. Tests showed that he, like many people, is a secretor; that is, he secretes traces of blood in his bodily fluids, such as saliva or semen. Traces of blood found in the vaginal swab turned out to be consistent with Williams' blood type. A blood sample of Williams was compared with the blood found in the vaginal swab taken from the victim by means of a DNA comparison. DNA testing compares strands of coating present in the genetic molecule of deoxyribonucleic acid, commonly called DNA. The structure of an individual's DNA molecule, which contains genetic information, is so unique that it is commonly referred to as a genetic fingerprint. DNA evidence, although not challenged in this appeal, is admissible, if relevant, so long as the probative value of the evidence is not outweighed by its prejudicial value. *Kelly v. State,* 824 S.W.2d 568, 572–74 (Tex.Crim.App.1992); TEX.R.CRIM. EVID. 402, 403, 702. The DNA testing revealed that the DNA pattern found in Williams' blood matched the DNA pattern observed in blood from the seminal fluid taken from the victim.

The victim was not able to identify her assailants. She had worked with Williams' wife and met him through his wife. Williams had been to her apartment and knew where she lived. Before the sexual assault, she had a strange conversation in

which Williams asked her if anyone had performed oral sex on her.

In defense, Williams' attorney challenged the validity of the DNA testing. The defense also called Williams' mother, wife and friend, who all testified that on June 25, 1988, Williams was in Fort Walton Beach, Florida, visiting with Virginia Williams, his mother. Jennifer Williams, his sister, confirmed that he was in Fort Walton Beach sometime during the latter part of June for a baby shower. Williams testified that on June 24, 1988, he left Dallas for Fort Walton Beach to attend a baby shower for his wife, spent the weekend in Florida and returned to Dallas on June 27.

Roger Day testified that on the day of the offense he had sexual intercourse with the victim and that at the time Charles Williams was not present. Williams' brother, Carl Williams, testified that he knew the victim and her former husband and that he knew the victim was dating Roger Day.

After the presentation of the defense evidence, the State offered some rebuttal. Linda Haugie, a Baylor Medical Center employee, testified that Williams' wife, Stephanie, was at work on June 27, 1988, from 8:00 a.m. until 4:30 p.m.

The State recalled Williams' wife, who had previously testified that she and her husband were in Florida when the attack took place. She then admitted that she worked in Dallas on June 27 and that, after all, she did not know whether she and her husband were in Florida on that weekend.

As we have indicated, the jury determines the credibility of the witnesses and may reject any or all of a witness' testimony. *Penagraph v. State*, 623 S.W.2d at 343. In this trial, the witnesses who placed Williams in Florida were, besides himself and his wife, his family and friends. Ultimately, his wife admitted that she did not know, as she had testified earlier, whether she and Williams were in Florida on the weekend that the sexual assault took place. The jury was entitled to disregard the testimony of the defense witnesses. For instance, the victim testified she knew Roger Day by name only, whereas

Day and Carl Williams testified that Day had dated the victim. Day testified he had sex with the victim on the day of the sexual assault. Day's and Williams' accounts were not consistent with the victim's account or the physical evidence. Obviously, the jury did not believe Day's or Carl Williams' testimony in this regard and probably discounted their testimony altogether. It was entitled to disbelieve any or all of the witnesses. On the other hand, it was entitled to believe the State's evidence. Among the State's evidence, one expert testified that, based on the DNA testing, there was about a 1 in 12,500,000 chance that the blood found in the seminal fluid taken from the victim's vaginal area was not that of Charles Williams.

Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt and that the evidence is therefore legally sufficient. Viewing all the evidence presented at trial, we determine that the judgment is not so against the great weight and preponderance of the evidence as to be manifestly unjust; the evidence is factually sufficient to support the conviction.

We affirm the trial court's judgment.