In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00147-CR


______________________________




CARL DEAN KING, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 196th Judicial District Court


Hunt County, Texas


Trial Court No. 20,089




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Carl Dean King appeals from his convictions for aggravated sexual assault. For each offense,
the jury assessed his punishment at life in prison and a fine of $10,000.00. On appeal, King contends
that the evidence was factually and legally insufficient to support his convictions, and that his trial
counsel was ineffective. 

 The jury found King guilty of the following offenses: (1) aggravated sexual assault by
penetration of the victim's sexual organ by the defendant's sexual organ; (2) aggravated sexual
assault by penetrating the mouth of the victim with the male sexual organ; and (3) aggravated sexual
assault by penetrating the anus of the victim with a vibrator. In the present case, the facts giving rise to this prosecution are undisputed. On or about
October 2, 1999, the victim was attacked and raped in her home located in Hunt County, Texas. 
According to police, the offender entered the victim's home by pulling up a screen on the front porch
of the house. During the course of the attack, the victim's face was covered, first by a pillowcase and
then by a pair of black pantyhose. Because the victim was blindfolded throughout the incident, she
testified she could not identify her attacker. 

 The prosecution introduced physical evidence, DNA analysis, and evidence of a past
conviction for disorderly conduct (window peeping). Joel Gipson, the patrol deputy that investigated
the crime scene on the night in question, testified that, during the course of the investigation, he
seized evidence from the crime scene consisting of bed clothes, bed sheets, pillowcases, a pink
blanket, black pantyhose, a towel, a glass pitcher, the vibrator used in the offense, and a tube of
cocoa butter. Subsequently, the glass pitcher, vibrator, and cocoa butter were sent to the Texas
Department of Public Safety (DPS) in Austin for fingerprint analysis. The fingerprint analysis failed
to produce an identifiable fingerprint. 

 Immediately after the victim was raped, she was taken to the emergency room and a sexual
assault examination was performed. Officer Robles delivered the results of the examination to the
DPS Crime Laboratory in Garland. The laboratory positively detected semen from a saliva swab,
as well as on the pantyhose seized at the crime scene. In addition to the specimens retrieved from
the crime scene, the Hunt County police took a blood sample from King while he was in custody
later on a disorderly conduct charge for window peeping. The State elicited testimony that the DNA
tests from King's blood were consistent with the DNA found in the sperm specimens. Specifically,
the State introduced testimony that the DNA profile found in both the blood sample and the sperm
specimens existed in approximately one person per 1.65 quintillion (1) for the Caucasian population. 
Further, the State's expert testified that in her opinion King was the source of the semen found at the
crime scene. 

 The State introduced evidence King was arrested and pled guilty to disorderly conduct
(window peeping) in close proximity to the victim's home. However, before the introduction of that
evidence,  the  court  held  a  hearing  outside  the  presence  of  the  jury  to  determine  its
admissibility. The State contended the arrest and conviction were admissible under Rule 404(b)
to show opportunity, intent or preparation, plan, or knowledge. See Tex. R. Crim. Evid. 404(b). 
The court held the prior conviction admissible because it related to opportunity, plan, intent, and
preparation. Further, the court held the conviction admissible to show identity because the victim's
testimony introduced the notion that King may have been looking for homes with poor security. (2) 
Therefore, the court concluded the relevance and probative value of the conviction outweighed any
prejudice that might have been caused. 

 The State offered the conviction into evidence in the presence of the jury, and King's attorney
expressly stated "no objection" to the admissibility of the conviction, waiving his right to complain
of the admission on appeal. Harris v. State, 656 S.W.2d 481, 484 (Tex. Crim. App. 1983) (holding
that, if trial counsel expressly states "no objection" to admissibility of evidence challenged in a prior
motion to suppress or evidentiary hearing, error would not be preserved and is waived). 

A. Legal Sufficiency

 When there has been a challenge to both the legal and factual sufficiency of the evidence, the
court must first determine if the evidence was legally sufficient to support the verdict. Clewis v.
State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996); Hines v. State, 978 S.W.2d 169, 172 (Tex.
App.-Texarkana 1998, no pet.). Accordingly, the proper standard of review to determine legal
sufficiency is whether the evidence would support the verdict when viewed in a light most favorable
to the verdict. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In other words, if any reasonable trier of fact could have found the essential
elements of the crime beyond a reasonable doubt, the verdict will be deemed legally sufficient.
Clewis, 922 S.W.2d at 134. 

 In Brown v. State, 881 S.W.2d 582, 584 (Tex. App.-Corpus Christi 1994, no pet.), the court
held the appellant entered the victim's home with the intent to commit and did commit the felony
offense of sexual assault. On appeal, Brown contended the DNA evidence presented at trial was
insufficient to link him to the crime. Id. at 584-86. The prosecution offered DNA evidence in the
form of Brown's fingerprints taken from the victim's home and vaginal swabs taken from the victim.
Id. Additionally, the prosecution procured testimony from two forensic scientists, and the
prosecution's scientists determined that, based on the DNA analysis, Brown was a B secretor and
PGM 1+2+, (3) and his DNA type was found in one person per 200,000 in the African-American
population, one in three million in the Caucasian population, and one in one million in the Hispanic
population. Id. Consequently, the experts testified Brown could not be excluded as a suspect. Id. 
Given the results of the DNA testing, the court held that, when viewing all of the evidence in the
light most favorable to the verdict, a rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Id. at 586; see Glover v. State, 825 S.W.2d 127, 128 (Tex.
Crim. App. 1992) (holding DNA evidence in sexual assault case was admissible to prove identity). 
 Similarly, in Williams v. State, 848 S.W.2d 915, 916 (Tex. App.-Texarkana 1993, no pet.),
this Court held the evidence legally sufficient to affirm a conviction for aggravated sexual assault. 
The victim could not identify her attacker. Id. However, the police performed a DNA comparison
between the seminal fluid taken from the victim and blood and saliva samples taken from Williams. 
Id. The prosecution presented evidence that, based on the DNA testing, there was a one in
12,500,000 chance that the blood found in the seminal fluid taken from the victim's vaginal area was
not that of Williams. Id. at 917. On the other hand, Williams produced testimony that the victim
had sexual intercourse with another individual on the day of the assault and that Williams was out
of the state with his wife on the day of the offense. Id. However, Williams' wife admitted she did
not know of Williams' whereabouts on the day of the offense. Id. This Court held that, viewing the
evidence in the light most favorable to the jury's verdict, a rational trier of fact could have found the
existence of the essential elements of the crime beyond a reasonable doubt. Id. This Court reasoned
that the jury determines the credibility of the witnesses and may reject any or all of the witnesses'
testimony and could have chosen to disbelieve the testimony of Williams' witnesses. Id.; see
Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981) (holding jury 
exclusive judge of credibility of witnesses and may reject any or all of any witnesses' testimony). 

 In the present case, the State presented evidence that the police were able to recover semen
specimens from the pantyhose used to blindfold the victim, as well as from oral swabs taken from
the victim during the course of the sexual assault exam. At trial, the prosecution presented the
testimony of Lorna Beasley (4) and Judith Floyd, (5) both of whom conducted DNA analysis on the semen
specimens collected from the victim and the blood samples collected from King. Beasley testified,
based on her DNA analysis, that King, in her expert opinion, was the source of the specimens taken
from both the saliva swab and the pantyhose. Specifically, Beasley testified there was a one in 1.65
quintillion chance the specimen from the saliva swab did not come from King. Beasley also testified 
there was a one in eighty-two chance the specimen collected from the pantyhose did not come from
King, and she explained the number was much smaller because the specimen was mixed with the
DNA of the victim and the specimen itself was much smaller than that taken from the saliva swab. 
The State also procured testimony from Floyd, who testified there was a one in 1.18 trillion chance 
the sperm specimen from the swab did not come from King. In addition to the DNA evidence, the
State also introduced evidence King was convicted approximately three months after the assault in
question for disorderly conduct (window peeping) in close proximity to the victim's home. 

 The Texas Court of Criminal Appeals has held DNA evidence is admissible to prove identity.
 Glover, 825 S.W.2d at 128. Additionally, in Williams, the only evidence presented by the
prosecution linking the appellant to the crime was DNA analysis, yet this Court held such evidence
was legally sufficient to establish identity. Williams, 848 S.W.2d at 916-17. In the present case, the
prosecution presented DNA evidence linking King to the scene of the crime, as well as evidence of
a prior conviction for disorderly conduct in close proximity to the victim's home. The jury was
entitled to weigh the evidence presented by both King and the prosecution to determine if King was
the offender. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979) (jury, in all cases, is exclusive
judge of facts proved and weight to be given testimony). Therefore, viewing the evidence in the light
most favorable to the jury's verdict, we conclude a rational jury could have found King guilty of the
crime charged. We overrule King's first point of error. 

B. Factual Sufficiency

 In his second point of error, King contends the evidence was factually insufficient to support
the verdict. A factual sufficiency review dictates the evidence be viewed in a neutral light, favoring
neither party. Johnson, 23 S.W.3d at 7. In determining the factual sufficiency of the evidence to
establish the elements of the offense, we view all the evidence in a neutral light and set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Id. at 7. Further, we set aside the verdict for factual insufficiency only if (1) the evidence
in  support  of  a  vital  fact,  considered  as  standing  alone,  is  factually  too  weak  to  support  it,
or (2) looking at all the evidence, some evidence supports a positive inference and some supports
a negative inference, but the state's evidence is so weak as to make the finding against the great
weight and preponderance of the available evidence. Goodman v. State, 66 S.W.3d 283 (Tex. Crim.
App. 2001). 

 In the present case, King contends the state's evidence, that he could not be excluded as the
source of the male DNA found as a result of the sexual assault examination, was not sufficient in
light of the fact that the victim could not identify her attacker, no latent fingerprints or footprints
were found at the crime scene, and the glass pitcher seized at the crime scene was broken while in
police custody. Additionally, King presented testimony that the police failed to determine if he had
certain identifiable traits at the time of the offense, such as facial hair and shaved pubic region. (6) 

 Roberson v. State, 16 S.W.3d 156 (Tex. App.-Austin 2000, pet. ref'd), was similar to the case
at bar. Specifically, Roberson challenged his conviction for aggravated assault, arguing that, in the
absence of circumstantial evidence such as eyewitness testimony, fingerprints, or physical proximity
to the crime scene, the State had not produced factually sufficient evidence to support a conviction. 
Id. at 159. The State presented expert testimony that Roberson could not be excluded as the source
of the semen taken from the victim in a post-rape examination because Roberson was a blood type
O secretor with a PGM type of 1- 1+, identical to the attacker. Id. at 161. Further, the state produced
testimony from two expert witnesses that in their opinion Roberson was the source of the semen
recovered from the crime scene. Id. at 161-63. At the close of the experts' testimony, the state
rested, and Roberson did not present any evidence. Id. at 163. The court held that, because
Roberson did not offer any evidence, the conviction would be overturned only if the state's evidence,
standing alone, was factually too weak to support the conviction. Id.; see Goodman, 66 S.W.3d at
283. Accordingly, the court affirmed the conviction. In doing so, it held based on the state's DNA
evidence, the blood grouping test, and the court's obligation to give deference to the jury's verdict,
that the evidence was not so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Roberson, 16 S.W.3d at 171; see Johnson, 23 S.W.3d at 7.

 As set out above, King presented the testimony of two witnesses who testified they did not
verify whether King had been shaved in the pubic area. However, when compared to the evidence
presented by the State, set forth in the legal sufficiency analysis, King has failed to show the verdict
is against the great weight and preponderance of the evidence. See Johnson, 23 S.W.3d at 7. The
Texas Court of Criminal Appeals has repeatedly held DNA evidence is admissible to prove identity.
Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992); Glover, 787 S.W.2d at 547. Further,
in Roberson, the court held that DNA evidence, standing alone, without additional circumstantial
evidence, was legally and factually sufficient to establish identity. Roberson, 16 S.W.3d at 171-72. 
Despite King's contention that, because a blood grouping test was not performed, the evidence is
factually insufficient, King has failed to cite to any authority that would render the State's evidence
unreliable and cause the jury's verdict to be clearly wrong and unjust. As a result, King has failed
to meet his burden, and the evidence is factually sufficient to support the verdict. We overrule
King's second point of error.

C. Assistance of Counsel 

 In his third point of error, King contends his trial counsel was ineffective. The standard of
testing claims of ineffective assistance of counsel is set out in Strickland v. Washington, 466 U.S.
668 (1984), and adopted for Texas constitutional claims in Hernandez v. State, 726 S.W.2d 53, 57
(Tex. Crim. App. 1986). To prevail on this claim, an appellant must prove by a preponderance of
the evidence (1) his counsel's representation fell below an objective standard of reasonableness and
(2) the deficient performance prejudiced his defense. Strickland, 466 U.S. 668; Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this standard, a claimant must prove counsel's
representation so undermined the proper functioning of the adversarial process that the trial cannot
be relied on as having produced a just result. Strickland, 466 U.S. at 686. 

 Our review of counsel's representation is highly deferential, with a strong presumption that
counsel's conduct falls within a wide range of reasonable representation. Strickland, 466 U.S. at
689. This Court will not second-guess through hindsight the strategy of counsel at trial, nor will the
fact that another attorney might have pursued a different course support a finding of ineffectiveness. 
 Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Harner v. State, 997 S.W.2d 695, 704
(Tex. App.-Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in
the record, and the record must affirmatively demonstrate the alleged ineffectiveness. Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

 In the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate
court will assume a strategic motivation if any can be imagined. Garcia v. State, 57 S.W.3d 436,
441 (Tex. Crim. App. 2001). We will not conclude the challenged conduct constitutes deficient
performance unless the conduct was so outrageous that no competent attorney would have engaged
in it. Id.; see Thompson, 9 S.W.3d at 814.

 The burden is on the appellant to overcome that presumption by identifying the acts or
omissions of counsel that are alleged to have constituted the ineffective assistance and then
affirmatively prove that they fall below the professional norm for reasonableness. Jackson v. State,
973 S.W.2d 954 (Tex. Crim. App. 1998). Then, the appellant must prove that counsel's errors,
judged by the totality of the representation, denied him or her a fair trial. Merely showing they had
some conceivable effect on the proceedings is inadequate. Strickland, 466 U.S. at 693.

 Because the appellant must affirmatively prove counsel's representation was ineffective, the
record has often not been sufficiently developed to enable an appellate court to adequately determine
whether the appellant was provided ineffective assistance of counsel. Thompson, 9 S.W.3d at 814-15.

 For example, in Thompson, the appellant's trial counsel objected several times to the
admissibility of a certain piece of evidence, and the trial court sustained his objection on each
occasion. Id. at 810-12. However, during the course of the trial, the prosecution offered the
evidence again and counsel failed to object, causing the evidence to be admitted into the record. Id. 
On appeal, the appellant contended counsel's failure to object resulted in ineffective assistance of
counsel. Id. at 813. The court held the record was silent as to why counsel failed to object. Id. at
814. The court reasoned the failure to object may have been attributable to a reasonable belief that
the prosecution was correct in offering the evidence. Because the first prong of Strickland is not
satisfied if there is any plausible reason for the trial attorney's actions, the court held Thompson
failed to meet his burden of proof and declined to hold his counsel was ineffective. Id.; see
Strickland, 466 U.S. 668. However, the court did hold that "the general doctrine that forbids an
application for writ of habeas corpus after direct appeal has addressed the issue [did] not apply" and
that such a hearing would be appropriate to allow the trial attorney to explain his reasons for failing
to take proper actions. Thompson, 9 S.W.3d at 814-15. 

 In the present case, King argues his counsel was ineffective in affirmatively stating "no
objection" when the State sought to introduce King's previous conviction for disorderly conduct
(window peeping). Specifically, in a hearing conducted outside the presence of the jury, the trial
court decided to allow the admission of the prior conviction. The record is entirely void of any
explanation for counsel's statement of "no objection." Similarly, in Thompson, the court held the
record had not been sufficiently developed, to allow that court to adequately consider the issue on
direct appeal. Thompson, 9 S.W.3d at 814. The court reasoned that "an appellate court should be
especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during
what amounts to otherwise satisfactory representation, especially when the record provides no
discernible explanation of the motivation behind counsel's actions." Id. In the present case, King
has failed to meet the first prong of Strickland because the record has not been adequately developed
for this Court to consider whether counsel's representation was ineffective. However, like
Thompson, King is not precluded from bringing a petition for writ of habeas corpus to fully develop
the record. Id. at 814-15.

 We overrule King's third point of error and affirm the conviction.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 13, 2002

Date Decided: October 17, 2002


Publish
1. One quintillion would be the equivalent of a one with eighteen zeros behind it.
2. At trial, the victim testified her assailant informed her she needed to get better security. As
a result, the trial court reasoned that the prior conviction for window peeping was relevant to show
identity in that King could have been searching for homes with poor security. 
3. Brown v. State, 881 S.W.2d 582, 585 (Tex. App.-Corpus Christi 1994, no pet.). The forensic
scientist determined from the seminal fluid recovered from the crime scene that the semen was from
an individual having blood type B. Further, she tested for phosphoglucomutase (PGM) and
determined there were three possible types out of ten, which were 1+2+, 1-2+, or 2+.
4. Lorna Beasley is a section supervisor for the serology DNA section of the Texas Department
of Public Safety Crime Laboratory in Garland, Texas. Her duties include supervising the serology
and DNA sections, as well as performing DNA analysis. 
5. Judith Floyd is a supervisor of the forensic department for GeneScreen, a company located
in Dallas, Texas. 
6. The victim described her attacker as having a shaved pubic region and without facial hair.