NUMBER 13-10-00551-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI – EDINBURG

                                                                                                                             

 

KENNETH CHARLES HUNT,                                                      Appellant, 

 

v.

 

THE STATE OF TEXAS,                                                               
Appellee.

                                                                                                                             

 

On appeal from the 128th
District Court

of Orange County, Texas.

                                                                                                                             

 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Garza 

Memorandum Opinion by
Justice Garza

 

            A jury found
appellant, Kenneth Charles Hunt, guilty of aggravated robbery, a first-degree
felony, with an affirmative finding that a deadly weapon was used or
exhibited.  See Tex. Penal Code
Ann. § 29.03(a)(2), (b) (West 2003).  Appellant pleaded “true”
to an enhancement paragraph, and the jury sentenced him to forty years’
imprisonment in the Texas Department of Criminal Justice—Institutional
Division.  See id. § 12.42(c)(1) (West Supp. 2010).[1] 
By two issues, appellant contends that:  (1) the evidence is insufficient to
support his conviction; and (2) the trial court erred in denying his Batson challenge. 
See Batson v. Kentucky, 476 U.S. 79, 89 (1986).  We affirm.

I. 
Background[2]

A.  State’s Evidence

1.  Cristy Delgado

            Cristy Delgado testified
that she is employed at Ace Cash Express, a check-cashing business, in Vidor,
Texas.  On the morning of July 18, 2006, she was the only employee in the
store.  Delgado heard noise coming from the roof and thought that workers were
repairing the roof.  Delgado walked to the back of the store, and as she passed
the bathroom, she saw a gloved hand raise a ceiling tile in the bathroom. 
Shortly thereafter, a black man fell into the bathroom.  Delgado saw his face
because it was not covered.  The man pulled out a gun and attempted to cover
his face with his T-shirt.  He instructed her to open the store safe and she
complied.  Moments later, a second black man came through the hole in the
ceiling wearing a ski mask.  After she opened the safe, Delgado complied with
instructions to lie face down on the floor.  She could hear the first robber in
the front of the store taking money from the cash registers.  The second robber
was taking money out of the safe.  During the robbery, Delgado pressed a “panic
button” that she had on her neck thirty times.  After the men cleaned out the
safe, she could hear them trying to leave through the hole in the bathroom
ceiling.  Delgado got up, briefly glanced back at the men trying to climb a
rope hanging through the hole in the ceiling and ran outside.  She ran to the
beauty salon next door and called 911.  

            On cross-examination,
Delgado testified that the robbers took approximately $26,000 in cash.

2.  Kenneth Bost 

            Kenneth Bost, an officer
with the Vidor police department, was the first officer to arrive at the scene
of the robbery.  After learning that the robbers had fled through the roof,
Officer Bost went to the back of the building in an attempt to apprehend them,
but the robbers had left the scene.  Officer Bost also viewed a surveillance
video of the robbery. 

3.  L. B. Cupid 

            L. B. Cupid, a detective with the
Vidor police department, testified that a ski cap and T-shirt were recovered
from the roof of Ace Cash Express store.  DNA obtained from the ski cap is
consistent with appellant’s DNA profile.  When Detective Cupid questioned
appellant regarding the robbery, appellant denied involvement and said that he
was in state jail when the robbery occurred.  Detective Cupid investigated
appellant’s claim and learned that appellant’s alibi was not true.  When
Detective Cupid asked appellant about the gun used in the robbery, appellant
said, “I did not have a gun.”[3] 


B.  Defense Evidence

1.  Leticia Hunt

            Leticia Hunt, appellant’s mother,
lives in Houston, Texas.  Hunt viewed the surveillance video of the robbery and
saw the ski mask worn by one of the robbers.  She recalled taking a ski cap and
other clothing to a women’s shelter in Houston.  Hunt testified that she
donated the clothing sometime before July 2006.  On cross-examination, the
prosecutor asked Hunt if she specifically remembered donating that exact cap to
the shelter; Hunt responded, “There is no way I can tell what color, the
consistency of that cap.  I knew that I gave a cap away, along with a bunch of
other giveaways, in Houston.”  The prosecutor emphasized that Hunt had refused
to provide this information to prosecutors prior to trial when it could have
been investigated.  

2.  Sarah Marie Garcia 

            Sarah Garcia testified that she grew
up in the same neighborhood as appellant and has known him for about twenty
years.  She saw appellant eating breakfast at a Denny’s on Highway 6 in
Houston, Texas between 8:30 and 9:45 a.m. on the morning of July 18, 2006. 
Garcia recalls the date because she was picking up her wedding dress for a
fitting.  Garcia testified that she was charged with burglary of a building
fifteen years earlier when she was nineteen years old.  On cross-examination,
Garcia admitted that she had several convictions for driving while
intoxicated.  Garcia said that about three months before trial, “a friend” told
her about appellant’s arrest. 

II. 
Legal Sufficiency

            By his
first issue, appellant contends that the evidence is insufficient to support
his conviction.  

            The court
of criminal appeals has held that there is “no meaningful distinction between
the Jackson v. Virginia legal sufficiency standard and the Clewis factual-sufficiency
standard” and that the Jackson standard “is the only standard that a
reviewing court should apply in determining whether the evidence is sufficient
to support each element of a criminal offense that the State is required to
prove beyond a reasonable doubt.”  Brooks v. State, 323 S.W.3d 893,
902–03, 912 (Tex. 2010) (plurality op.) (citing Jackson v. Virginia, 443
U.S. 307, 319 (1979)).  Accordingly, we review claims of evidentiary
sufficiency under “a rigorous and proper application of the Jackson standard
of review.”  Id. at 906–07, 912.  Under the Jackson standard,
“the relevant question is whether, after viewing the evidence in the light most
favorable to the prosecution, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.”  Jackson,
443 U.S. at 319; see Brooks, 323 S.W.3d at 898–99 (characterizing the Jackson
standard as:  “Considering all of the evidence in the light most favorable
to the verdict, was a jury rationally justified in finding guilt beyond a
reasonable doubt”).

            We
measure the legal sufficiency of the evidence by the elements of the offense as
defined by a hypothetically correct jury charge.  Coleman v. State, 131
S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref’d) (citing Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).  “Such a charge [is]
one that accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State’s burden of proof or unnecessarily restrict
the State's theories of liability, and adequately describes the particular
offense for which the defendant was tried.”  Villarreal v. State, 286
S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting Malik, 953 S.W.2d at
240).  

            A person commits the
felony offense of aggravated robbery when:  (1) in the course of committing
theft; (2) with intent to obtain and maintain control of property; (3) he
knowingly or intentionally; (4) threatens or places another in fear of imminent
bodily injury or death; and (5) then and there uses or exhibits a deadly
weapon.  Tex. Penal Code Ann.  §§
29.02(a)(2) (West 2003), 29.03(a)(2); see Santos v. State, 116 S.W.3d
447, 457 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d).  Because the
jury was charged on the law of parties, it could have reached its verdict by
deciding that the other robber committed the elements of the offense and
appellant, acting with intent to promote or assist the commission of the
aggravated robbery, solicited, encouraged, directed, aided, or attempted to aid
the other to commit the robbery.  See Tex.
Penal Code Ann. § 7.02(a) (West 2003).  

            The only
element appellant challenges is identity:  that he was the person wearing the
ski mask during the robbery.  “There is no question that the State is required
to prove beyond a reasonable doubt that the accused is the person who committed
the crime charged.”  Roberson v. State, 16 S.W.3d 156, 167 (Tex.
App.—Austin 2000, pet. ref’d).  “[T]he State may prove [a] defendant's identity
and criminal culpability by either direct or circumstantial evidence, coupled
with all reasonable inferences from that evidence.”  Gardner v. State,
306 S.W.3d 274, 285 (Tex. Crim. App. 2009).  For the purposes of proving guilt
beyond a reasonable doubt, direct and circumstantial evidence are equally
probative.  Roberson, 16 S.W.3d at 167.  

            Here,
appellant’s conviction rests on circumstantial evidence:  DNA taken from the
ski mask found at the crime scene fits appellant’s DNA profile and no other DNA
was obtained from the ski mask.  The court of criminal appeals has held that
DNA evidence is admissible to prove identity.  Glover v. State, 825
S.W.2d 127, 128 (Tex. Crim. App. 1992).  DNA evidence alone, without additional
circumstantial evidence, may be sufficient to establish identity.  See King
v. State, 91 S.W.3d 375, 380 (Tex. App.—Texarkana 2007, pet. ref’d)
(holding DNA evidence linking appellant to crime and evidence of a prior
conviction for disorderly conduct in close proximity to the victim's home
sufficient for aggravated sexual assault conviction); Roberson, 16
S.W.3d at 168 (holding DNA evidence sufficient to establish appellant’s
identity); see also Oliver v. State, No. 14-09-690-CR, 2010 Tex. App.
LEXIS 6850, at *6-7 (Tex. App.—Houston [14th Dist.] Aug. 24, 2010, no
pet.) (op., not designated for publication) (finding evidence sufficient to
support conviction for aggravated robbery where appellant’s DNA was found on
mask recovered at the scene, appellant gave false name when pulled over, and
stolen items were recovered in vehicle); Neighbors v. State, No.
02-07-00176-CR, 2008 Tex. App. LEXIS 4467, at *10-11 (Tex. App.—Fort Worth June
12, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that
DNA evidence collected by police after a robbery that matched an individual
through CODIS provided legally and factually sufficient evidence of the appellant's
identity as the robber).  

            In
addition, Detective Cupid testified that appellant initially gave him the false
alibi that he was in jail at the time of the robbery.  A defendant’s lies to
police officers and the giving of a false alibi is conduct that shows a
consciousness of guilt and may be considered as circumstantial evidence of
guilt.  King v. State, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (making
false statements to cover up crime is evidence indicating a consciousness of
guilt and is admissible to prove commission of offense).  

            Appellant
points to his mother’s testimony that she donated a ski mask to a women’s
shelter and Garcia’s testimony that appellant was in Houston on the morning of
the robbery.  However, it was the jury’s role to reconcile conflicts,
contradictions, and inconsistencies in the evidence, and to judge the
credibility of witnesses.  See Brooks, 323 S.W.3d at 900; Brown v.
State, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008).  We afford almost
complete deference to these determinations.  See Lancon v. State, 253
S.W.3d 699, 704-05 (Tex. Crim. App. 2008).  The jury was free to disbelieve
appellant’s alibi witnesses.  Hester v. State, 909 S.W.2d 174, 178 (Tex.
App.—Dallas 1995, no pet.).  Viewing the evidence in the light most favorable
to the verdict, we hold that a rational jury could have identified appellant,
beyond a reasonable doubt, as the person who committed the aggravated robbery. 
See Jackson, 443 U.S. at 318-19; Brooks, 323 S.W.3d at 895. 
Thus, the evidence was legally sufficient to support appellant’s
conviction.  We overrule his first issue. 

III.  Batson
Challenge

            By his
second issue, appellant contends that the trial court violated his equal
protection rights by denying his motion for mistrial under Batson.[4] 
See Batson, 476 U.S. at 89.  

            When
reviewing a Batson challenge, an appellate court examines the record in
the light most favorable to the trial court's ruling and reverses only when the
ruling is clearly erroneous.  Young v. State, 283 S.W.3d 854, 866 (Tex.
Crim. App. 2009).  A ruling is clearly erroneous when, after searching the
record, an appellate court is left with the definite and firm conviction that
the trial court made a mistake.  Hill v. State, 827 S.W.2d 860, 865
(Tex. Crim. App. 1992).

            A Batson
challenge to a peremptory strike has three steps.  Grant v. State, 325
S.W.3d 655, 657 (Tex. Crim. App. 2010).  First, an opponent of the strike must
establish a prima facie showing of racial discrimination.  Id.  Second,
the proponent of the strike must state a race-neutral explanation for the
strike.  Id.  Third, the trial court must decide whether the opponent of
the strike has proved purposeful racial discrimination.  Id.  When a
prosecutor articulates the reasons for the peremptory challenge without
prompting or inquiry from the trial court, and the trial court rules on the
ultimate question of discrimination, whether appellant met his burden in the
first step to establish a prima facie case of racial discrimination becomes
moot.  Hill, 827 S.W.2d at 865.

            During
defense counsel’s voir dire examination, panel member Adrian Geter stated that
he may be called into work.  When asked if the conflict would create a hardship
for him, Geter stated that he did not know.  After the State struck Geter, the
only African-American within reach on the panel, defense counsel stated that he
“here and now make[s] a Batson challenge to that particular strike.” 
The State responded as follows:

[Prosecutor]:           Okay.  Judge,
I guess the State’s response at this point will be to enumerate non-racial reasons
why the State believes Mr. Geter being [sic] an inappropriate juror.  Based on
our impaneling the jury and our questionnaires, the State struck him for a
number of reasons.  One, he is a male under the age of 30, which have all been
struck.  Two, his employer box is left blank.  They’ve all been struck.  And
then, three, he’s actually requested not to be on the jury; and we met his
request, which he’s been struck.  So, those are non-race based reasons why we
felt that he be struck. 

 

[the Court]:                Why did he
ask to be struck?

 

[Prosecutor]:              Work
related.

 

[Defense counsel]:     He said he
might or might not be called in during the trial, but he did not know.  And I
will renew my objection.

 

[the Court]:                  All right. 
Noted.  The objection is overruled. 

 

            Thus,
without prompting or inquiry by the trial court, the State offered three
race-neutral reasons for striking panel member Geter.  When the State gives a
race-neutral explanation, the issue becomes the facial validity of the
explanation, and unless a discriminatory intent is inherent in that
explanation, the reason offered will be deemed race-neutral.  Guzman v.
State, 85 S.W.3d 242, 246 (Tex. Crim. App. 2002).  In this case, the State’s
explanation contained no inherent discriminatory intent.  Once the State
proffered its race-neutral reason for striking Geter, appellant bore the burden
to convince the trial court that the State’s reason was not race-neutral.  See
Ford v. State, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999); see also
Johnson v. State, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002) (“[A] party’s
failure to offer any real rebuttal to a proffered race neutral explanation can
be fatal to his claim.”).  Because defense counsel did not question the
prosecutor or provide the trial court with any evidence in rebuttal, the
prosecutor’s explanations for the strike, which are race-neutral on their face,
are not rebutted based on the evidence before us.  See Ford, 1 S.W.3d at
693.  Thus, the trial court's denial of the Batson challenge was not
clearly erroneous.  We overrule appellant’s second issue.  

IV. 
Conclusion

            We affirm the
trial court’s judgment. 

 

 

 

DORI CONTRERAS GARZA

Justice

 

Do
not publish.

Tex. R. App. P.
47.2(b)

Delivered
and filed the

29th
day of August, 2011.









[1]
Pursuant to the State’s request, the trial court ordered the sentence to be
served consecutively with a twelve-month sentence imposed on appellant on April
9, 2010, in Harris County, Texas.

 





[2]
This case is before the Court on transfer from the Ninth Court of Appeals in
Beaumont pursuant to an order issued by the Supreme Court of Texas.  See Tex. Gov’t Code Ann. § 73.001 (West
2005).





[3]
The State’s theory of the case was that the robber who attempted to cover his
face with a T-shirt held the gun.  DNA recovered from the T-shirt did not match
appellant’s DNA profile.  The jury was charged on the law of parties.  





[4]
We note that the record does not reflect that appellant moved for “mistrial” on
this issue.  Outside the presence of the jury, after each side had exercised
peremptory challenges, the defense objected to the State’s striking a
particular juror, stating that he was making “a Batson challenge to that
particular strike.”  After hearing the State’s response, the trial court overruled
appellant’s objection.