# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00645-CR

**Nicodemo Coria-Gonzalez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 331ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-17-900078, THE HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Nicodemo Coria-Gonzalez of the first-degree felony offense of aggravated sexual assault and assessed punishment of life imprisonment. *See* Tex. Penal Code § 22.021. The district court rendered judgment consistent with the jury's verdict.

In two issues on appeal, Coria-Gonzalez contends that: (1) there was insufficient evidence supporting the jury's finding that he was the perpetrator of the aggravated sexual assault; and (2) the district court erred by denying his motion for mistrial because a limiting instruction was insufficient to cure the State's erroneous introduction of a 911 recording from a different sexual-assault victim. We will affirm the district court's judgment of conviction.

# BACKGROUND

A jury convicted Coria-Gonzalez of aggravated sexual assault involving a predawn attack on Izetea Johnson[1] in a secluded area off Ferguson Lane in northeast Austin.

## Testimony about attack and investigation

The first three witnesses at trial were police officers and an emergency medical services (EMS) medic, who summarized their actions at the crime scene. The police officers described the area off Ferguson Lane as dark, "pitch black," brushy, and wooded. They found Johnson unclothed and attempting to cover herself. She was crying and shaking as she reported to police that she had been sexually assaulted, that her attacker held a knife to her during the assault, and that he threatened to kill her. A knife police recovered at the scene was admitted into evidence.

The EMS medic testified that on arrival at the scene, she observed Johnson sitting naked on the side of the road with police officers. EMS staff wrapped Johnson with a sheet and assisted her to the ambulance. The medic saw bruising to the right side of Johnson's forehead and scratch marks on the right side of her neck. Johnson was "distraught" but able to tell the medic details about the sexual assault and stated that the attacker "had a knife during that time." The medic stated that Johnson described her attacker as "[a] Hispanic male approximately 5-7."

After the police officers and the medic testified, Johnson shared her recollection of the attack and the events preceding it. She testified that in the hours before the assault, she attended a friend's birthday party at a hotel. When the party was over later that evening, Johnson left to take a bus home, but the bus that she planned to take was not in service because it was

---

[1] The jury was informed that this was the victim's pseudonym for trial.

after 10:00 p.m. While walking, Johnson texted another friend, an Uber driver, for a ride home. Johnson was still walking and texting on her phone when she saw a flash and was "blindsided" from the right, causing her to lose consciousness. Johnson regained consciousness inside a car being driven by a man. He spoke in Spanish, which she pretended not to understand, and threatened to kill her. After the man had been driving for "what felt like forever" to Johnson, the man stopped the car, forced her out of it, and got her to the ground. He assaulted her vaginally and attempted to assault her anally before she escaped from him. Johnson testified that after her "drunk and clumsy" attacker pulled up his pants, she grabbed her phone and ran naked toward some tall grass and bushes, where she hid from him and called 911.

**Wrong 911 call played**

While Johnson was on the stand, the State offered a recording of her 911 call, which the district court admitted over a defense objection that all three voices on the recording were not identified. The State then mistakenly played the first couple of minutes of a 911 call from a different sexual-assault victim, K.H. After K.H. stated her name on the recording, both parties' counsel approached the bench, and the district court excused the jury. After extensive inquiry into the circumstances of the mistake, the district court found that the State played the wrong 911 recording unintentionally. However, Coria-Gonzalez contended that the prejudice from the excerpt of that recording was incurably prejudicial and moved for a mistrial. The district court denied the mistrial motion, instructed the jury not to consider for any purpose the 911 audio recording "inadvertently played in place of the actual 911 call," and resumed trial.

3

**Correct 911 call played**

The jury then heard the correct 911 call, a twelve-and-a-half minute recording. In it, Johnson provides her name, states that she was just raped, and asks the 911 operator to "GPS [her] phone" for the location. Johnson states that her attacker hit her and dragged her inside a car and then drove her somewhere off Cameron Road. She also states that she is hiding in the bushes and that "he's looking for me in the bushes." Johnson described her attacker as a "Mexican guy" with "dark black hair." She also states that he had a knife and a black sportscar. The 911 operator then adds EMS personnel to the call. While crying, Johnson asks the EMS staff member to "please help . . . I'm naked out here." She states that her attacker turned off Cameron Road but that she could not remember the name of the street, "Jefferson or something like that, I don't remember the name of the street." Minutes later, Johnson's voice becomes hushed as she reports that her attacker is looking for her with a flashlight. She whispers, "He tried to kill me." The 911 operator asks if Johnson is near Ferguson Lane, and Johnson confirms that her attacker turned on that street. Toward the end of the recording, police arrive at the scene.

**DNA evidence**

Johnson testified that after her assault, she was transported to a hospital where she underwent a forensic exam. A sexual assault forensic nurse testified that she took swabs of Johnson's body, including her back. A partial DNA profile obtained from a swab of Johnson's back contained a mixture of DNA of two individuals, at least one of them male.

The forensic scientist who analyzed and interpreted the swab from Johnson's back testified that Coria-Gonzalez could not be excluded as a possible contributor of this DNA profile. She explained that the "cannot-be-excluded" terminology in her DNA analysis was based on a

trend away from using other terms, such as "matches": "Forensics is actually moving away from saying matches and saying that it could be an individual.  All I can say is that he cannot be excluded."  The forensic scientist concluded that obtaining this DNA profile was "1.90 billion times more likely" if the DNA came from Johnson and Coria-Gonzalez than if the DNA had come from Johnson and an unknown individual.

The jury also heard from a police detective who testified that he executed a search warrant on a vehicle—a 1999 black, two-door Acura—that he identified as belonging to Coria-Gonzalez.  Photographs of that car were admitted into evidence.

At the conclusion of the guilt-innocence phase of trial, the jury found Coria-Gonzalez guilty of aggravated sexual assault and assessed his punishment at life imprisonment.  The district court rendered judgment on the jury's verdict.  This appeal followed.

## DISCUSSION

**Sufficiency of evidence showing identity of perpetrator**

In his first issue, Coria-Gonzalez contends that there was insufficient evidence supporting the jury's finding that he was the perpetrator of the aggravated sexual assault against this victim.  When reviewing such legal-sufficiency complaints, we consider the evidence in the light most favorable to the verdict and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018).  The factfinder is the sole judge of the weight and credibility of the evidence.  *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018).  A factfinder may accept one version of the facts and reject another, and the factfinder may reject any part of a witness's testimony.  *Febus v. State*,

542 S.W.3d 568, 572 (Tex. Crim. App. 2018). We defer to the factfinder's resolution of conflicts in the evidence, weighing of the testimony, and drawing of reasonable inferences from basic facts to ultimate facts. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

We apply the same standard to direct and circumstantial evidence. *Id*. Circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Nisbett*, 552 S.W.3d at 262. Each fact need not point directly and independently to the defendant's guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id*.

Further, the identity of a perpetrator may be proven by direct evidence, circumstantial evidence, or inferences. *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd); *see also Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (setting out types of evidence that may be used to establish identity and noting that although victim misidentified juror as perpetrator, circumstantial evidence pointed to defendant as perpetrator); *Shumaker v. State*, No. 03-14-00639-CR, 2015 Tex. App. LEXIS 8702, at *5 (Tex. App.—Austin Aug. 20, 2015, no pet.) (mem. op., not designated for publication) (noting that sufficiency of evidence identifying person as perpetrator is determined from cumulative effect of all evidence).

Here, the jury was provided with several types of evidence indicating that Coria-Gonzalez was the perpetrator of Johnson's sexual assault, including DNA evidence and Johnson's recollection of certain details about her attacker and his car. The record reflects that the attacker, described as "drunk and clumsy," sexually assaulted Johnson by penetrating her vagina with his penis and that he unsuccessfully attempted to assault her anally. A swab taken from Johnson's back in the hours after the attack yielded a "partial DNA profile" that a forensic

scientist concluded was "a mixture of two individuals" and that "[a]t least one of them was male." The forensic scientist further stated:

> Assuming that Izetea Johnson is a contributor to this mixture, obtaining this profile is 1.90 billion times more likely if the DNA had originated from Izetea Johnson and Nicodemo Coria-Gonzalez than if the DNA had come from Izetea Johnson and an unknown individual. So what this means is that Nicodemo Coria-Gonzalez cannot be excluded as a possible contributor to this profile.

In addition to the DNA evidence, the jury heard Johnson's 911 call in which she described her attacker as a "Mexican guy" with "dark black hair." Johnson also told the EMS medic that her attacker was "[a] Hispanic male approximately 5-7." The jury was able to observe Coria-Gonzalez's physical characteristics in court.

Johnson testified that her attacker spoke to her in Spanish. At trial, Coria-Gonzalez relied upon an interpreter, and defense counsel told the venire that her client did not speak English: "So you know that we do have an interpreter, and obviously you can tell Nico, our client, does not speak English." Johnson also testified that her attacker drove her in a black, two-seater car. She gave a similar description of his vehicle, a "black sportscar," during her 911 call. A police detective identified a 1999 black, two-door Acura as belonging to Coria-Gonzalez, and photographs of that car were admitted into evidence.

Coria-Gonzalez does not address most of this evidence. He points to the absence of any in-court identification of him as the perpetrator, and he discounts the DNA evidence by stating that he "was only tied to the back swab" and that "the best the analyst could say is that he could not be excluded as a possible contributor." Relying on *Johnson v. State*, 978 S.W.2d 703, 707 (Tex. App.—Corpus Christi 1998), *aff'd*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000), Coria-

7

Gonzalez contends that "[t]he State may have established that a rape occurred" but not that he was the perpetrator of that offense.

In *Johnson*, the jury had conflicting analyses of DNA evidence indicating that the likelihood of another person sharing the same profile as the defendant was as high as 8.5% or 26%. *Id*. at 706. Applying a now-rejected sufficiency standard, which does not consider the evidence in the light most favorable to the jury's verdict, the reviewing court concluded that the evidence was not "factually sufficient" to prove beyond a reasonable doubt that the defendant was hthe guilty party. *Id*. at 707; *cf. Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (holding that reviewing courts should apply only legal-sufficiency standard in determining whether evidence is sufficient to support conviction).

This jury was presented with evidence establishing a strong probability that Coria-Gonzalez left his DNA on Johnson, i.e., it was 1.90 billion times more likely that the DNA originated from Coria-Gonzalez and Johnson than from Johnson and some unknown individual. Unlike in *Johnson*, there is no conflicting DNA analysis suggesting any lesser probability that the male genetic material originated from Coria-Gonzalez. *Cf. Johnson*, 978 S.W.2d at 706. Coria-Gonzalez construes the testimony that he "cannot be excluded as a possible contributor" to the DNA profile as an indication that this evidence is not strongly connected to him; however, the forensic scientist explained that her use of the "cannot be excluded" terminology is based on a movement in forensics "away from saying matches and saying that it could be an individual." Thus, as to this DNA profile, all she could say is that Coria-Gonzalez "cannot be excluded."

Further, this Court and other Texas courts have held that DNA evidence alone can be legally sufficient to establish the identity of the perpetrator of a crime. *See, e.g., Molina v. State*, 587 S.W.3d 100, 108, 109 (Tex. App.—Houston [1st Dist.] 2019, no pet. h.) (noting that

evidence showed defendant "could not be excluded as a possible contributor of the DNA" from victim's undergarments; that "statistically, it was exceedingly improbable that the DNA was someone else's"; that "DNA evidence alone may establish an assailant's identity in a rape prosecution"; and that "[e]yewitness identification is not required"); *Roberson*, 16 S.W.3d at 168 (concluding that DNA evidence alone was legally sufficient to establish perpetrator's identity and support conviction for aggravated sexual assault); *Williams v. State*, 848 S.W.2d 915, 916-17 (Tex. App.—Texarkana 1993, no pet.) (concluding that evidence was legally sufficient to support conviction for aggravated sexual assault when only evidence connecting defendant to offense was DNA analysis); *see also Neighbors v. State*, No. 02-07-00176-CR, 2008 Tex. App. LEXIS 4467, at *10-11 (Tex. App.—Fort Worth June 12, 2008, pet. ref'd) (mem. op., not designated for publication) (determining that DNA evidence alone—collected by police after 2003 robbery and first linked to defendant in 2006 through Combined DNA Indexing System (CODIS)—provided legally sufficient evidence of defendant's identity as robber); *Shumaker*, 2015 Tex. App. LEXIS 8702, at *5 (noting that "[t]he absence of an in-court identification is merely a factor for the jury to consider in assessing the weight and credibility of the witnesses' testimony").

Having considered this evidence in the light most favorable to the jury's verdict, along with the reasonable inferences that the jury could make from that evidence and the cumulative force of all the incriminating circumstances, we conclude that the evidence was legally sufficient to establish Coria-Gonzalez's identity as the perpetrator of the sexual assault against Johnson. *See Jackson*, 443 U.S. at 319; *Nisbett*, 552 S.W.3d at 262; *Molina*, 587 S.W.3d at 108, 109; *Roberson*, 16 S.W.3d at 168; *Williams*, 848 S.W.2d at 916-17. Accordingly, we overrule Coria-Gonzalez's first issue.

9

**Denial of mistrial**

In his second issue, Coria-Gonzalez contends that the district court erred by denying his motion for mistrial after the State erroneously introduced the recording of the 911 call from a different sexual-assault victim. He complains that the prejudicial effect from that extraneous-offense evidence was not curable by a limiting instruction.

A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ocon v. State*, 284 S.W.3d 880, 884-85 (Tex. Crim. App. 2009); *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009). A mistrial is appropriate only in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors and should be granted only if residual prejudice remains after less drastic alternatives have been explored. *Ocon*, 284 S.W.3d at 884-85.

Generally, when evidence is improperly admitted at trial, a mistrial is required only when that evidence is "clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury." *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999) (quoting *Gonzales v. State*, 685 S.W.2d 47, 49 (Tex. Crim. App. 1985)); *Flores v. State*, 513 S.W.3d 146, 166 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). In all other situations, the jury is presumed to follow the trial court's instruction to disregard improperly admitted evidence. *Hinojosa*, 4 S.W.3d at 253. Whether the erroneous admission of evidence requires a mistrial is determined by looking at the facts and circumstances of the case. *Id.*; *see Ocon*, 284 S.W.3d at 884.

We review the denial of a mistrial for an abuse of discretion, considering the evidence in the light most favorable to the trial court's ruling and looking to the arguments

before the court at the time of its ruling. *Ocon*, 284 S.W.3d at 884. We must uphold the ruling if it was within the zone of reasonable disagreement. *Id.*

Here, Coria-Gonzalez moved for mistrial during the guilt-innocence phase of trial, after the State mistakenly played the first couple of minutes of a 911 call from a different sexual-assault victim, K.H. In the recording excerpt, K.H. reports that "he" had just beaten her up and raped her, that she was somewhere in the woods, that she could hear and see "his car," and that "his car is black." Approximately two minutes into the recording, K.H. states her name twice.[2]

Counsel for both parties recognized the error after hearing K.H. state her name. Counsel approached the bench, and the district court excused the jury and conducted an extensive inquiry, including taking sworn testimony from an assistant district attorney about how the error occurred.[3] Ultimately, the court found that the error was unintentional: "The Court cannot find and will not find that this was an act that was designed to induce a mistrial in any way by the State, that there's no malintent. It was an error, the Court is willing to find and here so finds." The court further stated,

> I believe that an instruction will cure it. And specifically I believe it can be cured due to the fact that there's no direct connection between what was heard with this defendant. If this was a case where that audiotape said this defendant's name in some way—but it is a transaction that is definitely similar, but the jury does not know it relates to this defendant.

The district court denied the mistrial motion, summoned the jury, and then instructed them not to consider the excerpt of the 911 recording:

---

[2] K.H. states her name at the 1:54 mark of the 911 recording and repeats her name at the 2:00 mark.

[3] The State played an electronic file selected from a folder on a laptop computer, rather than the actual exhibit of the 911 recording that was admitted into evidence on a compact disc.

> Members of the jury, I have an instruction for you. You just recently, before breaking, heard the beginnings and a portion of what's called a 911 call. You're instructed to disregard the audio recording of the 911 call that was just played before you here in open court. This call was admitted before you in error. It was inadvertently played in place of the actual 911 call which I admitted and marked—had marked as State's Exhibit No. 1. You shall not consider the portion of the 911 call that was admitted in error for any purpose whatsoever in this case. You shall not discuss or comment on that 911 call that was admitted in error.

In determining whether a trial court abused its discretion by denying a mistrial, we consider: (1) the prejudicial effect of the error; (2) the curative measures taken; and (3) the certainty of conviction absent the prejudicial event, here, the erroneous admission of evidence. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (considering these factors in context of prosecutor's improper argument); *Flores*, 513 S.W.3d at 166; *Degollado v. State*, No. 04-06-00404-CR, 2007 Tex. App. LEXIS 6032, at *3 (Tex. App.—San Antonio Aug. 1, 2007, no pet.) (mem. op., not designated for publication).

As to the first factor concerning the prejudicial effect of the improperly admitted evidence, we conclude that the excerpt of the 911 recording played for the jury was not highly prejudicial. In the brief statements K.H. made before the State stopped playing the call, the jury heard nothing identifying Coria-Gonzalez as the perpetrator of the offense.[4] Coria-Gonzalez contended that this recording allowed the State to "backhandedly introduce extraneous offenses" prejudicial to his case. However, to constitute an extraneous offense, the evidence must show a crime or bad act and the defendant's connection to it. *Moreno v. State*, 858 S.W.3d 453, 463 (Tex. Crim. App. 1993); *Bryan v. State*, No. 05-93-01021-CR, 1996 Tex. App. LEXIS 3545, at

---

[4] Although K.H. states on the recording that "his car is black," at that point in the trial, the jury had not heard Johnson's 911 call describing the vehicle she rode in as a black sportscar or the police detective's testimony identifying a 1999 black, two-door Acura as belonging to Coria-Gonzalez, and photographs of that car had not yet been offered into evidence.

12

*17 (Tex. App.—Dallas Aug. 7, 1996, no pet.) (mem. op., not designated for publication) (concluding that no extraneous-offense evidence was admitted because prosecutor's question did not necessarily show bad act and defendant's connection to it; thus, trial court did not err in denying defendant's requests for instruction to disregard and for mistrial). Here, the district court correctly concluded that there was no direct connection between what was heard on the recording and Coria-Gonzalez. Any inference the jury could have made connecting him to the erroneously played recording would have been vague. *See Kipp v. State*, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994) (determining that witness's reference to extraneous offense did not warrant mistrial because reference was "rather vague" and did not directly implicate defendant); *Briscoe v. State*, No. 03-11-00014-CR, 2013 Tex. App. LEXIS 10859, at *33 (Tex. App.— Austin Aug. 29, 2013, no pet.) (mem. op., not designated for publication) (citing *Kipp*, 876 S.W.2d at 339).

As to the second factor concerning the curative measures taken to address the improperly admitted evidence, we note that the district court provided a limiting instruction specifically directing the jury to disregard the recording of the erroneously admitted 911 call, not to consider it for any purpose whatsoever, and not to discuss or comment on it. A trial court's instruction to disregard improperly admitted evidence will usually cure error. *Flores*, 513 S.W.3d at 167; *Phillips v. State*, 130 S.W.3d 343, 347 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 193 S.W.3d 904, 914 (Tex. Crim. App. 2006)). The jury is presumed to follow a trial court's instruction to disregard improperly admitted evidence. *Hinojosa*, 4 S.W.3d at 253; *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Flores*, 513 S.W.3d at 167. Nothing in the trial record indicates that the district court's instruction to disregard was ineffective in curing any prejudice from the erroneously played recording.

13

Finally, as to the third factor concerning the certainty of conviction absent the improperly admitted evidence, we have previously noted that the DNA evidence connecting Coria-Gonzalez to Johnson's assault was highly incriminating and that this evidence alone was sufficient to support his conviction. *See Molina*, 587 S.W.3d at 108, 109; *Roberson*, 16 S.W.3d at 168; *Williams*, 848 S.W.2d at 916-17. It is unlikely that the jury's decision to convict was influenced by an erroneously played 911 recording that was not directly connected to him. Johnson's testimony established most of the elements of the aggravated-sexual-assault offense. The jury assessed the credibility of the forensic scientist's testimony about the DNA evidence and Johnson's testimony about the attacker. Moreover, under Texas law an aggravated-sexual-assault conviction "is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred." Tex. Code Crim. Proc. art. 38.07(a); *see Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (concluding that victim's testimony was itself sufficient to establish identity of her attacker and act of penetration). Here, Johnson reported her sexual assault to 911, police, and EMS staff immediately after it occurred.

After considering the minimal prejudicial effect of the erroneously admitted 911 recording, the presumed efficacy of the district court's instructions to the jury to disregard it, and the strength of the evidence supporting Coria-Gonzalez's conviction without it, we conclude that the recording was not "clearly calculated to inflame the minds of the jury" and was not "of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury." *See Hinojosa*, 4 S.W.3d at 253; *Mosley*, 983 S.W.2d at 259; *Flores*, 513 S.W.3d at 166. Thus, the district court could have determined, within the zone of reasonable disagreement,

14

that denial of the motion for mistrial was proper. *See Ocon*, 284 S.W.3d at 884; *Hinojosa*, 4 S.W.3d at 253; *accord State v. Sappington*, 169 P.3d 1096, 1106-07 (Kan. 2007) (concluding that district court did not abuse its discretion by denying motion for mistrial after State's witness briefly played wrong confession videotape—in which jury saw defendant wearing orange jail suit but in correct confession videotape he was wearing street clothes—and rejecting defendant's contention that it would be obvious to jury that he was questioned about separate incident; jury could have also inferred that defendant was questioned multiple times in case being tried). We overrule Coria-Gonzalez's second issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed: January 29, 2020

Do Not Publish

15