

NUMBER 13-10-00551-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

KENNETH CHARLES HUNT,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

### On appeal from the 128th District Court
### of Orange County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Garza

A jury found appellant, Kenneth Charles Hunt, guilty of aggravated robbery, a first-degree felony, with an affirmative finding that a deadly weapon was used or exhibited. *See* TEX. PENAL CODE ANN. § 29.03(a)(2), (b) (West 2003). Appellant pleaded "true" to an enhancement paragraph, and the jury sentenced him to forty years' imprisonment in the Texas Department of Criminal Justice—Institutional Division. *See*

*id.* § 12.42(c)(1) (West Supp. 2010).[1]  By two issues, appellant contends that:  (1) the evidence is insufficient to support his conviction; and (2) the trial court erred in denying his *Batson* challenge.  *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986).  We affirm.

## I. BACKGROUND[2]

### A.  State's Evidence

### 1.  Cristy Delgado

Cristy Delgado testified that she is employed at Ace Cash Express, a check-cashing business, in Vidor, Texas.  On the morning of July 18, 2006, she was the only employee in the store.  Delgado heard noise coming from the roof and thought that workers were repairing the roof.  Delgado walked to the back of the store, and as she passed the bathroom, she saw a gloved hand raise a ceiling tile in the bathroom.  Shortly thereafter, a black man fell into the bathroom.  Delgado saw his face because it was not covered.  The man pulled out a gun and attempted to cover his face with his T-shirt.  He instructed her to open the store safe and she complied.  Moments later, a second black man came through the hole in the ceiling wearing a ski mask.  After she opened the safe, Delgado complied with instructions to lie face down on the floor.  She could hear the first robber in the front of the store taking money from the cash registers.  The second robber was taking money out of the safe.  During the robbery, Delgado pressed a "panic button" that she had on her neck thirty times.  After the men cleaned out the safe, she could hear them trying to leave through the hole in the bathroom ceiling.  Delgado got up, briefly glanced back at the men trying to climb a rope hanging

---

[1] Pursuant to the State's request, the trial court ordered the sentence to be served consecutively with a twelve-month sentence imposed on appellant on April 9, 2010, in Harris County, Texas.

[2] This case is before the Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

through the hole in the ceiling and ran outside. She ran to the beauty salon next door and called 911.

On cross-examination, Delgado testified that the robbers took approximately $26,000 in cash.

## 2. Kenneth Bost

Kenneth Bost, an officer with the Vidor police department, was the first officer to arrive at the scene of the robbery. After learning that the robbers had fled through the roof, Officer Bost went to the back of the building in an attempt to apprehend them, but the robbers had left the scene. Officer Bost also viewed a surveillance video of the robbery.

## 3. L. B. Cupid

L. B. Cupid, a detective with the Vidor police department, testified that a ski cap and T-shirt were recovered from the roof of Ace Cash Express store. DNA obtained from the ski cap is consistent with appellant's DNA profile. When Detective Cupid questioned appellant regarding the robbery, appellant denied involvement and said that he was in state jail when the robbery occurred. Detective Cupid investigated appellant's claim and learned that appellant's alibi was not true. When Detective Cupid asked appellant about the gun used in the robbery, appellant said, "I did not have a gun."[3]

## B. Defense Evidence

## 1. Leticia Hunt

Leticia Hunt, appellant's mother, lives in Houston, Texas. Hunt viewed the surveillance video of the robbery and saw the ski mask worn by one of the robbers.

---

[3] The State's theory of the case was that the robber who attempted to cover his face with a T-shirt held the gun. DNA recovered from the T-shirt did not match appellant's DNA profile. The jury was charged on the law of parties.

She recalled taking a ski cap and other clothing to a women's shelter in Houston. Hunt testified that she donated the clothing sometime before July 2006. On cross-examination, the prosecutor asked Hunt if she specifically remembered donating that exact cap to the shelter; Hunt responded, "There is no way I can tell what color, the consistency of that cap. I knew that I gave a cap away, along with a bunch of other giveaways, in Houston." The prosecutor emphasized that Hunt had refused to provide this information to prosecutors prior to trial when it could have been investigated.

**2. Sarah Marie Garcia**

Sarah Garcia testified that she grew up in the same neighborhood as appellant and has known him for about twenty years. She saw appellant eating breakfast at a Denny's on Highway 6 in Houston, Texas between 8:30 and 9:45 a.m. on the morning of July 18, 2006. Garcia recalls the date because she was picking up her wedding dress for a fitting. Garcia testified that she was charged with burglary of a building fifteen years earlier when she was nineteen years old. On cross-examination, Garcia admitted that she had several convictions for driving while intoxicated. Garcia said that about three months before trial, "a friend" told her about appellant's arrest.

## II. Legal Sufficiency

By his first issue, appellant contends that the evidence is insufficient to support his conviction.

The court of criminal appeals has held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a

4

reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902–03, 912 (Tex. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, we review claims of evidentiary sufficiency under "a rigorous and proper application of the *Jackson* standard of review." *Id.* at 906–07, 912. Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Brooks*, 323 S.W.3d at 898–99 (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt").

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik*, 953 S.W.2d at 240).

A person commits the felony offense of aggravated robbery when: (1) in the course of committing theft; (2) with intent to obtain and maintain control of property; (3) he knowingly or intentionally; (4) threatens or places another in fear of imminent bodily injury or death; and (5) then and there uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. §§ 29.02(a)(2) (West 2003), 29.03(a)(2); *see Santos v. State*, 116 S.W.3d 447, 457 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). Because the jury was

5

charged on the law of parties, it could have reached its verdict by deciding that the other robber committed the elements of the offense and appellant, acting with intent to promote or assist the commission of the aggravated robbery, solicited, encouraged, directed, aided, or attempted to aid the other to commit the robbery. *See* TEX. PENAL CODE ANN. § 7.02(a) (West 2003).

The only element appellant challenges is identity: that he was the person wearing the ski mask during the robbery. "There is no question that the State is required to prove beyond a reasonable doubt that the accused is the person who committed the crime charged." *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd). "[T]he State may prove [a] defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence." *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). For the purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative. *Roberson*, 16 S.W.3d at 167.

Here, appellant's conviction rests on circumstantial evidence: DNA taken from the ski mask found at the crime scene fits appellant's DNA profile and no other DNA was obtained from the ski mask. The court of criminal appeals has held that DNA evidence is admissible to prove identity. *Glover v. State*, 825 S.W.2d 127, 128 (Tex. Crim. App. 1992). DNA evidence alone, without additional circumstantial evidence, may be sufficient to establish identity. *See King v. State*, 91 S.W.3d 375, 380 (Tex. App.—Texarkana 2007, pet. ref'd) (holding DNA evidence linking appellant to crime and evidence of a prior conviction for disorderly conduct in close proximity to the victim's home sufficient for aggravated sexual assault conviction); *Roberson*, 16 S.W.3d at 168 (holding DNA evidence sufficient to establish appellant's identity); *see also Oliver v.*

6

*State,* No. 14-09-690-CR, 2010 Tex. App. LEXIS 6850, at *6-7 (Tex. App.—Houston [14th Dist.] Aug. 24, 2010, no pet.) (op., not designated for publication) (finding evidence sufficient to support conviction for aggravated robbery where appellant's DNA was found on mask recovered at the scene, appellant gave false name when pulled over, and stolen items were recovered in vehicle); *Neighbors v. State*, No. 02-07-00176-CR, 2008 Tex. App. LEXIS 4467, at *10-11 (Tex. App.—Fort Worth June 12, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that DNA evidence collected by police after a robbery that matched an individual through CODIS provided legally and factually sufficient evidence of the appellant's identity as the robber).

In addition, Detective Cupid testified that appellant initially gave him the false alibi that he was in jail at the time of the robbery. A defendant's lies to police officers and the giving of a false alibi is conduct that shows a consciousness of guilt and may be considered as circumstantial evidence of guilt. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (making false statements to cover up crime is evidence indicating a consciousness of guilt and is admissible to prove commission of offense).

Appellant points to his mother's testimony that she donated a ski mask to a women's shelter and Garcia's testimony that appellant was in Houston on the morning of the robbery. However, it was the jury's role to reconcile conflicts, contradictions, and inconsistencies in the evidence, and to judge the credibility of witnesses. *See Brooks*, 323 S.W.3d at 900; *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). We afford almost complete deference to these determinations. *See Lancon v. State*, 253 S.W.3d 699, 704-05 (Tex. Crim. App. 2008). The jury was free to disbelieve appellant's alibi witnesses. *Hester v. State*, 909 S.W.2d 174, 178 (Tex. App.—Dallas 1995, no pet.). Viewing the evidence in the light most favorable to the verdict, we hold that a

7

rational jury could have identified appellant, beyond a reasonable doubt, as the person who committed the aggravated robbery. *See Jackson*, 443 U.S. at 318-19; *Brooks*, 323 S.W.3d at 895. Thus, the evidence was legally sufficient to support appellant's conviction. We overrule his first issue.

### III. BATSON CHALLENGE

By his second issue, appellant contends that the trial court violated his equal protection rights by denying his motion for mistrial under *Batson*.[4] *See Batson*, 476 U.S. at 89.

When reviewing a *Batson* challenge, an appellate court examines the record in the light most favorable to the trial court's ruling and reverses only when the ruling is clearly erroneous. *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009). A ruling is clearly erroneous when, after searching the record, an appellate court is left with the definite and firm conviction that the trial court made a mistake. *Hill v. State*, 827 S.W.2d 860, 865 (Tex. Crim. App. 1992).

A *Batson* challenge to a peremptory strike has three steps. *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010). First, an opponent of the strike must establish a prima facie showing of racial discrimination. *Id.* Second, the proponent of the strike must state a race-neutral explanation for the strike. *Id.* Third, the trial court must decide whether the opponent of the strike has proved purposeful racial discrimination. *Id.* When a prosecutor articulates the reasons for the peremptory challenge without prompting or inquiry from the trial court, and the trial court rules on the ultimate question

---

[4] We note that the record does not reflect that appellant moved for "mistrial" on this issue. Outside the presence of the jury, after each side had exercised peremptory challenges, the defense objected to the State's striking a particular juror, stating that he was making "a *Batson* challenge to that particular strike." After hearing the State's response, the trial court overruled appellant's objection.

8

of discrimination, whether appellant met his burden in the first step to establish a prima facie case of racial discrimination becomes moot. *Hill*, 827 S.W.2d at 865.

During defense counsel's voir dire examination, panel member Adrian Geter stated that he may be called into work. When asked if the conflict would create a hardship for him, Geter stated that he did not know. After the State struck Geter, the only African-American within reach on the panel, defense counsel stated that he "here and now make[s] a *Batson* challenge to that particular strike." The State responded as follows:

| | |
|---|---|
| [Prosecutor]: | Okay. Judge, I guess the State's response at this point will be to enumerate non-racial reasons why the State believes Mr. Geter being [sic] an inappropriate juror. Based on our impaneling the jury and our questionnaires, the State struck him for a number of reasons. One, he is a male under the age of 30, which have all been struck. Two, his employer box is left blank. They've all been struck. And then, three, he's actually requested not to be on the jury; and we met his request, which he's been struck. So, those are non-race based reasons why we felt that he be struck. |
| [the Court]: | Why did he ask to be struck? |
| [Prosecutor]: | Work related. |
| [Defense counsel]: | He said he might or might not be called in during the trial, but he did not know. And I will renew my objection. |
| [the Court]: | All right. Noted. The objection is overruled. |

Thus, without prompting or inquiry by the trial court, the State offered three race-neutral reasons for striking panel member Geter. When the State gives a race-neutral explanation, the issue becomes the facial validity of the explanation, and unless a discriminatory intent is inherent in that explanation, the reason offered will be deemed

9

race-neutral. *Guzman v. State*, 85 S.W.3d 242, 246 (Tex. Crim. App. 2002). In this case, the State's explanation contained no inherent discriminatory intent. Once the State proffered its race-neutral reason for striking Geter, appellant bore the burden to convince the trial court that the State's reason was not race-neutral. *See Ford v. State*, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999); *see also Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002) ("[A] party's failure to offer any real rebuttal to a proffered race neutral explanation can be fatal to his claim."). Because defense counsel did not question the prosecutor or provide the trial court with any evidence in rebuttal, the prosecutor's explanations for the strike, which are race-neutral on their face, are not rebutted based on the evidence before us. *See Ford*, 1 S.W.3d at 693. Thus, the trial court's denial of the *Batson* challenge was not clearly erroneous. We overrule appellant's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
29th day of August, 2011.

10