

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-12-00149-CR

BRANDY LASHAY COOKS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 12F-488-202

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

## MEMORANDUM OPINION

Brandy Lashay Cooks was convicted of aggravated robbery with a deadly weapon enhanced by one prior felony conviction. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011), § 12.42(c)(1) (West Supp. 2012). Cooks pled true to an enhancement allegation, and a jury assessed his punishment at fifty-five years' imprisonment. Cooks asserts that the evidence is legally insufficient to establish he was the person who committed the robbery. We affirm the judgment of the trial court.

## I. Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

## II. Facts of the Offense

Returning from the grocery store shortly after dark on November 22, 2010, Mary Hedrick confronted in her driveway an unknown assailant with a gun. The assailant hit Hedrick in the

head twice. The assailant then stole her purse, told her to get her "fat A-- in the house," and left. As the unknown assailant was leaving, Hedrick saw the assailant's white knit hat come off. Hedrick, who was bleeding profusely, watched the hat on the ground until the police arrived.

Not only did the sight of the gun put Hedrick in fear of her life, the pain of her wounds and the fact that there was "blood everywhere"[1] led Hedrick to believe she had been shot and that she was going to die. Hedrick testified she was focused on the gun and did not get a good look at the assailant. Hedrick described the assailant as a black male "about my height," which was five feet seven inches,[2] whose age she approximated at "late teens, early twenties."

Don Berry, Hedrick's neighbor, observed part of the robbery. Berry heard a loud thump and went to a window where he saw Hedrick being robbed. Berry described the assailant's height as "between 5'4" and 5'7." Berry testified that the robber was "fairly short, kind of stocky built . . . . I would imagine somewhere between, just off my weight, between 170 and 180 pounds, something like that." Berry also saw the assailant's white knit hat come off.

III. Sufficiency of the Evidence

Approximately one year later, a DNA test revealed that the hat contained a mixture of DNA from two persons. Cooks was determined to be the major contributor, whose DNA could not be excluded from the fifteen different locations on the hat that were tested. The DNA of the unknown contributor was excluded from ten of the fifteen locations tested and could not be excluded from five of the locations. After testifying that the peak of Cooks' DNA was also

_____

[1]At the hospital, Hedrick received a CT scan and staples for her head wound. Hedrick described the pain as "like the inside of my head was on raging fire."

[2]Because the assailant was standing on a flower bed that had been filled with concrete, the assailant could have appeared to be taller than he was.

3

higher than the peak of the unknown contributor, the State's expert gave the following testimony:

> Q.      And what was your determination in looking at the peak heights of these two DNA profiles?
>
> A.      I was able to determine that Brandy Cooks was not a major component to the profile.  However, he was a major contributor.

Although this testimony is not altogether clear, the State's expert did clearly communicate that Cooks was a major contributor.  The State's expert, though, agreed that there was no way to determine how long the DNA had been on the cap.

The State introduced an interrogation video recording in which Cooks merely denies knowing anything about the robbery.[3]  Detective Daphne Stiles testified, over Cooks' objection, that she found it odd that Cooks did not ask questions about the white knit hat such as its color, style, or anything of that nature.  Stiles also testified, again over Cooks' objection, that Cooks did not have any work history.

The State also introduced evidence that Cooks had relatives who lived in a garage apartment near Berry's house and that Cooks had visited the apartment.  Stiles further testified that Cooks owned a black hat similar to the white hat found at the crime scene.

Cooks argues that even though DNA evidence is very "powerful," it generally is accompanied by other evidence implicating that the defendant participated in the crime.  He cites to a number of cases that were affirmed on legal sufficiency grounds, but they are all factually

---

[3]We note that Cooks waived his Fifth Amendment rights prior to the interrogation.  On appeal, Cooks does not argue his right to a presumption of innocence was violated.

distinguishable from this case.[4]  One of the cases relied upon by Cooks is *Marquez*.  In that case, the victim walked in on a burglary, punched the burglar, and then was beaten.  *Marquez*, 2008 Tex. App. LEXIS 3467, at *1.  The victim, age seventy-three, had poor eyesight and could only identify the burglar as a light-skinned Hispanic person of medium height and weighing approximately 180 pounds.  *Id.* at *2.  At the scene of the burglary, a hat was recovered containing DNA from two persons.  *Id.*  Marquez could not be excluded as the major contributor.  *Id.*  Even though a suitcase with some of the victim's belongings was found in the custody of a third person, the Dallas Court of Appeals concluded that sufficient evidence existed to convict Marquez.[5]

The cases cited by Cooks give us examples of instances in which the evidence was found to be sufficient, rather than DNA cases in which the evidence was deemed insufficient.

[4]*See Hunt v. State*, No. 13-10-00551-CR, 2011 Tex. App. LEXIS 7007 (Tex. App.—Corpus Christi Aug. 29, 2011, pet. ref'd) (mem. op., not designated for publication) (DNA found on ski mask at scene, no one else's DNA on ski mask, false alibi); *Perry v. State*, No. 14-09-00937-CR, 2010 Tex. App. LEXIS 9826 (Tex. App.—Houston [14th Dist.] Dec. 14, 2010, no pet.) (mem. op., not designated for publication) (defendant matched description, fled from police and wrecked car fleeing; purse and gun found nearby; DNA matched cap at scene; no mention of anyone else's DNA); *Oliver v. State*, No. 14-09-00690-CR, 2010 Tex. App. LEXIS 6850 (Tex. App.—Houston [14th Dist.] Aug. 24, 2010, no pet.) (mem. op., not designated for publication) (DNA matched cap left at scene and unknown person, gave false name to police, found with two guns, $1,000.00 cash, and the victim's license and credit cards); *Marquez v. State*, No. 05-07-00635-CR, 2008 Tex. App. LEXIS 3467 (Tex. App.—Dallas May 14, 2008, no pet.) (mem. op., not designated for publication) (discussed below); *King v. State*, 91 S.W.3d 375, 377 (Tex. App.—Texarkana 2002, pet. ref'd) (DNA match, only DNA present, past conviction for window peeping in same neighborhood); *Roberson v. State*, 16 S.W.3d 156, 170 (Tex. App.—Austin 2000, pet. ref'd) (DNA evidence of match with sperm sufficient by itself in rape case); *Williams v. State*, 848 S.W.2d 915, 916 (Tex. App.—Texarkana 1993, no pet.) (evidence sufficient when one assailant identified by victim, one assailant admitted having sex with victim, defense witnesses caught lying, assailant knew victim through wife, and one assailant matched DNA of blood secreted with semen).

[5]Marquez also complained that the other incriminating evidence from an inmate was unreliable and was likely an attempt to frame him.

The State does not have to disprove all alternative reasonable hypotheses. *See Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); *Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd). The State has the burden to present evidence that is sufficient to allow a rational juror to conclude, beyond a reasonable doubt, that Cooks committed the crime in question.

The DNA match proves that Cooks, at some time, wore the white cap dropped by the robber. Cooks had a similar black knit cap when arrested, and a rational juror could have concluded that the white cap belonged to Cooks. While we acknowledge that the evidence can be legally insufficient even when a suspect is linked to the scene by DNA evidence,[6] the DNA evidence is not the sole evidence linking Cooks to this offense. Cooks is also linked to the offense based on his unusually short height and his familiarity with and presence in the area where Hedrick's home was located.

Cooks' physical appearance is consistent with the description of the robber given by both Hedrick and Berry—a short, black male with a youthful appearance. A particularly distinguishing feature was that the robber was unusually short. A juror is not required to ignore the general experience and common knowledge of laypersons. A layperson would be permitted to note that most adult males are taller than Cooks' height of five feet four inches. The fact that

---

[6]*Reedy v. State*, 214 S.W.3d 567, 585 (Tex. App.—Austin 2006, pet. ref'd) (evidence legally insufficient despite suspect's DNA on whiskey bottle at suspect's campsite where the murder occurred).

6

Hedrick described the robber's age as late teens or early twenties when it appears he was in his thirties was an issue for the jury to resolve.[7]

Further, Detective Stiles testified that Cooks had relatives who lived less than a block from the site of the robbery. Cooks' relatives rented a garage apartment directly behind the home of Berry—the across the street neighbor to Hedrick. Stiles testified her investigation revealed that Cooks was known to have been a frequent visitor to the garage apartment. From the testimony of Stiles, a rational juror could have concluded Cooks was familiar with the area, was frequently in the area, and had the opportunity to commit the crime in question.

As noted by the Texas Court of Criminal Appeals, "proof of circumstantial evidence is not subject to a more rigorous standard than is proof by direct testimonial evidence." *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989). Although we may not have reached the same decision, we are unable to conclude a rational juror could not have found Cooks guilty beyond a reasonable doubt. Therefore, we defer to the jury's decision. The combined persuasive force of Cooks' DNA on the cap worn by the robber, Cooks' unusually short height consistent with the eyewitnesses' descriptions of the robber, and the fact that Cooks had familiarity with the area is sufficient evidence. We conclude a rational juror could have found Cooks guilty beyond a reasonable doubt.

---

[7]The clerk's record contains a criminal history datasheet that indicates Cooks is five feet four inches tall and lists eight possible dates of birth: 12/03/1973, 12/30/1975, 12/31/1975, 12/03/1976, 12/26/1976, 12/21/1977, 12/30/1977, and 12/31/1977. The incident occurred in November 2010. We note that documents filed in the clerk's record are not evidence, and we have not been directed to where the record contains evidence of Cooks' height and age. We acknowledge, however, that the jury was able to observe Cooks in the courtroom and determine whether he matched the general descriptions of Hedrick and Berry.

## IV.  Correction of Clerical Error

During our review of this case, we noticed that the judgment incorrectly states that Cooks pled guilty and waived his right to a jury trial and that the trial court assessed punishment.  This Court has authority to modify the judgment to make the record speak the truth when the matter has been called to our attention by any source.  *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992).  "Our authority to reform incorrect judgments is not dependent on the request of any party, nor does it turn on a question of whether a party has or has not objected in trial court; we may act sua sponte and may have a duty to do so."  *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.).  We modify the judgment to provide that Cooks pled not guilty and was convicted by a jury and that the jury assessed punishment.

## V.  Conclusion

The evidence is legally sufficient.  We modify the judgment to provide that Cooks pled not guilty, that Cooks was convicted by a jury, and that the jury assessed punishment.  As modified, we affirm the judgment of the trial court.


Jack Carter
Justice


Date Submitted:     April 29, 2013
Date Decided:      June 5, 2013

Do Not Publish

8